## Mrs. Rita Crossland v. Mrs. Edna Dunham.

No. 7487. Decided June 12, 1940.
Rehearing overruled October 23, 1940.
(140 S. W., 2d Series, 1095.)

*Ramey, Calhoun & Marsh,* of Tyler, *Greenwood, Moody & Robertson,* of Austin, for plaintiff in error.

Testator's will, having been written in the State of Oklahoma, where the testator then resided and where all of his property then was situated, and where no rules of community ownership of property by husband and wife existed, the expression "all my worldly property" contained in the will should be given the meaning and interpretation accorded it under the laws of Oklahoma, even though the testator later moved to Texas where he resided until his death, leaving community property in Texas which he had accumulated subsequent to his removal. Lanius v. Fletcher, 100 Texas 550, 101 S. W. 1076; Laval v. Staffel, 64 Texas 370; Calvery v. Calvery, 122 Texas 204, 55 S. W. (2d) 527.

*Lasseter, Simpson, Spruiell & Lowry,* of Tyler, for defendant in error.

The will in question being written in plain and unequivocal

language, there exists no necessity for a judicial construction thereof and the court is confined to the mere legal interpretation of the writing and the enforcement of the intention of the testator as expressed therein. The language being free from ambiguity, extrinsic evidence should not be resorted to in an attempt to add to, varry, contradict nor explain its terms. Baker v. Johnson, 64 S. W. (2d) 1037; Haupt v. Michaelis, 231 S. W. 706; 69 C. J. 42; 44 Tex. Jur. 677; 28 R. C. L. 204.

*Israel Smith,* of Tyler, guardian ad litem and counsel of record for Iris Nadine Dunham.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Smith County, Texas, by Mrs. Rita Crossland, joined pro forma by her husband, against Mrs. Edna Dunham and Iris Nadine Dunham to construe the last will of Carl G. Dunham, deceased. Mrs. Edna Dunham is the surviving widow of Carl G. Dunham, deceased. Iris Nadine Dunham is the minor daughter of Mr. and Mrs. Dunham. Mrs. Crossland is the daughter of Mr. Dunham by a former marriage. Mrs. Dunham was married to Mr. Dunham in 1920, and they lived together as husband and wife until the death of the husband in July, 1936. On July 19, 1928, Mr. Dunham executed his last will and testament. Omitting formal parts, such will reads as follows:

"I hereby bequeath to my lawful wife at time of death, one-half of all my worldly property, balance to be divided equally among my children, and hereby appoint my wife the sole executrix of this my last will and testament, to serve without bond."

The above will was executed with all the formalities to entitle it to probate in this State, and it has been duly probated in the probate court of Smith County, Texas, where Mr. and Mrs. Dunham resided at the time of Mr. Dunham's death.

At the time the above will was executed by the husband, Mr. and Mrs. Dunham were living together as husband and wife in the State of Oklahoma, and that was the State of their residense or domicile. Mr. Dunham owned some property in Oklahoma at the time. Also, at the time Mr. Dunham had no intention to remove to Texas and reside, and had no property here.

Mr. and Mrs. Dunham continued to reside in Oklahoma from the time the above will was executed until 1931, when they moved to Texas, where they resided continuously until Mr. Dunham died. The Dunhams brought no property here. After

they moved to Texas the Dunhams prospered, and Mr. Dunham left a considerable estate, consisting of both real and personal property, all located here, and all community.

The State of Oklahoma has no community property law, and Mrs. Crossland contends that because this will was executed in the State of Oklahoma, under the circumstances above detailed, Dunham's will, which bequeathed "all my worldly property" one-half to his wife and "balance to be divided equally among my children," should be construed as provided by the laws of Oklahoma, and therefore as intending to embrace and devise all property which, under the laws of Oklahoma, would comprise his estate. Such contention would disregard the community property laws of this State, and would effect a considerable change in the property passing under this will from what would pass under the laws of Texas. If the laws of Oklahoma alone are looked to in construing this will to determine the property passing thereunder, the effect will be that Mrs. Dunham will take nothing under this will, because she owns in her own right one-half of this community estate. On the other hand, the two daughters will take all of Mr. Dunham's community interest in this estate. If the laws of Texas are applied, Mrs. Dunham will take one-half of Mr. Dunham's half of the community estate, and the two daughters will take, in equal portions, the other half. Under our laws Mrs. Dunham owns one half of the community in her own right. Simply stated, the question to be decided is whether Mrs. Dunham gets as a consequence of this will three-fourths of the entire community estate and the two daughters one-eighth each, or whether Mrs. Dunham gets only one-half of the entire community estate, and the two daughters, in equal portions, the other half.

On final trial in the district court, that court construed this will as contended for by Mrs. Crossland. On appeal, the Beaumont Court of Civil Appeals reversed the judgment and interpretation of the district court, and held "that the effect and construction of wills is to be determined by the law of the testator's domicile in so far as it relates to personal property, and by the laws of the state where the property is situated in so far as it relates to realty. DeVaughn v. Hutchinson, 165 U. S. 566, 41 L. Ed. 827; Holman v. Hopkins, 27 Texas 38; King v. Lowery (Civ. App.), 80 S. W. (2d) 790 (writ refused.)" As applied to this case the opinion of the Court of Civil Appeals, in effect, holds that since all the property, real and personal, owned by Mr. Dunham at the time of his death was situated in Texas, and since Mr. Dunham at the time of his death resided in Texas, the laws of Texas will determine the effect of this

will, and the property, both real and personal, to pass there-under.

█ We have carefully considered the above holding of the Court of Civil Appeals in the light of the briefs and arguments of counsel on both sides, and in our opinion the opinion of the Court of Civil Appeals announces the already settled rule of law in this State. In fact, we think the opinion of his Court in Holman v. Hopkins, 27 Texas 38, supra, settles this case in conformity with the ruling and judgment of the Court of Civil Appeals. We quote the following from that opinion:

"It is now the well settled doctrine, that the law of the actual domicile of a testator is to govern in relation to his testament of personal property, whether the property is situated within the domicile of the testator or in a foreign country. (Story's Conflict of Laws, sec. 467; 1 Jarman on Wills, 3). But in respect to the real property of the testator, the place where the property is situated is to govern, not only as to the capacity of the testator and the extent of his power to dispose of the property, but as to the forms and solemnities to give the will its due attestation and effect. (Story's Con. L., sec. 474; I Jarman on Wills, 1.) 'And hence,' says Mr. Jarman, 'the place where the will of immovable property happens to be made, and the language in which it is written, are wholly unimportant as affecting both its construction and the ceremonial of its execution; the locality of the devised property is alone to be considered.' (1 id., 2.) "

It is urged by counsel for Mrs. Crossland that the Holman case, supra, "involved nothing except whether a will was *valid*, containing a plain devise of certain land and slaves in Texas, when the will was witnessed as required by the laws of Texas, and was not witnessed as required by the laws of Virginia, where the textatrix had her domicile when the will was made. The question of the *validity* of a devise of land or personalty, as dependent on the manner of execution of the will, being utterly different and determinable under utterly diverse rules, according to all authorities, from any question of *interpretation* of a bequest in a will of personalty or of a devise in a will of land, anything said in the opinion on the question of *interpretation* could be naught but dicta." We are not prepared to say that anything said by this Court about interpretation of the will involved in the Holman case was dicta. It is evident that the Court considered the rules of law announced in that opinion as necessary to decide the law question before it, and we are not prepared to say that such is not true. Also, we are of the

view that we reaffirmed the rules of law announced in the Holman case by refusing the writ of error in King v. Lowery, supra.

Counsel for Mrs. Crossland argue that the opinion in the Holman case, supra, was based, or attempted to be based, on the misinterpretation of Story's Conflict of Laws, sec. 474. We will not attempt to decide that question. It is enough to say that the opinion in the Holman case announces a clear and unambiguous rule of property in this State, which we ought not now to question or to change.

As we interpret their briefs and arguments, counsel for Mrs. Crossland contend that when this will is considered in the light of the extrinsic evidence contained in this record, showing the circumstances surrounding and concerning the testator, the subject matter of his devises or bequests, and the claimants of his bounty, at the time of the making of this will, a latent ambiguity therein is disclosed. It is then contended that when such extrinsic evidence is considered, it discloses an intent on the part of the testator, by this will, to dispose of the entire community of himself and his wife. We are aware of the fact that under the rule of law laid down in Thompson on Wills (2d Ed.), sec. 330, pp. 407, 408, there may be instances in which extrinsic evidence may be admissible, which discloses a latent ambiguity in a will,—that is, an ambiguity which does not appear on the face of such instrument. We do not deem it necessary in this opinion to discuss such rule or to even generally define its scope, or the character of cases to which it may be applied. It is enough to say that it cannot here be applied, because to do so would only result in refusing to apply the rule laid down in Holman v. Hopkins, supra.

We have read and carefully considered the opinion of the Court of Civil Appeals in this case, and in our opinion it correctly disposed of this case, and gives correct rules of law for such disposition. The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered June 12, 1940.

Rehearing overruled October 23, 1940.