**OWEN v. YOUNGER et al.**

No. 6170.

Court of Civil Appeals of Texas. Amarillo.

Oct. 8, 1951.

R. H. Cocke, Wellington, R. D. Miller, Hollis, Okl., Robinson & Oden, Altus, Okl., for appellant.

Williams, Broughton & Forbis, Childress, for appellees.

PITTS, Chief Justice.

This is a contest over the admission to probate of a will executed in compliance with all of the formalities required under Texas laws by Irma Nat Younger, a feme sole, on August 21, 1944, in the State of Oklahoma prior to her subsequent marriage on August 31, 1947, to contestant, L. H. Owen, with whom she lived continuously until the date of her death on December 4, 1950. The facts are not controverted. They reveal that testatrix resided continuously in the State of Oklahoma from the year 1908 until the date of her death which occurred

at her residence in the City of Hollis, Harmon County, Oklahoma, at which place she resided at the time she executed the will. The will in controversy disposes of no real estate other than two tracts of land consisting of 160 acres each, both situated in Childress County, Texas, and both owned by testatrix at the time of her death. Proponent Julian D. Younger is a named beneficiary under the will and he and Tice Younger were brothers of testatrix, were her nearest of kin residing in Texas and they both resided in Childress County, Texas. Testatrix bequeathed one tract of land to her brother, proponent Julian D. Younger, and the other tract of land she bequeathed to her three named nephews, the sons of her brother Tice Younger. Title 84, Section 108 of the 1941 Statute of the State of Oklahoma says: "A will executed by an unmarried woman is revoked by a subsequent marriage, and is not revived by the death of her husband." The will of testatrix has never been offered for probate in any of the courts of the State of Oklahoma but there does exist a general administration of the estate of Irma Nat Owen, deceased, formerly Irma Nat Younger, pending in the County Court of Harmon County, Oklahoma, a court with probate jurisdiction. The application for such appointment was made to the said court on December 12, 1950, by contestant, L. H. Owen, surviving husband of the deceased, and he was duly appointed administrator of such estate as a result of a hearing had by the court on December 27, 1950, after which he duly qualified as such.

On December 21, 1950, proponent Julian D. Younger filed an application with the will in question attached in the County Court of Childress County seeking to have the will admitted to probate in so far as it affects the realty devised by the will, and to have himself appointed administrator of the estate. Contestant, L. H. Owen, the surviving husband of testatrix, filed a plea to the jurisdiction of the court and subject thereto filed a protest urging a denial of proponent's request, followed by a request that he be appointed administrator ancillary to the administration then pending in the

State of Oklahoma in case there was a need for an administration in the State of Texas.

On January 23, 1951, contestant's plea in abatement was overruled by the probate court, the will was admitted to probate but the request for the appointment of an administrator was denied, it appearing that no necessity for an administration existed. Contestant perfected his appeal to the District Court where a trial was had before the court without a jury with all matters previously mentioned there urged with the same result and judgment was accordingly rendered on March 31, 1951, from which contestant has perfected his appeal to this court.

Contestant predicates his appeal upon three points of error contending (1) that his plea to the jurisdiction of the court should have been sustained because original jurisdiction of the probate of a will lies in the state of the domicile of the deceased, (2) that under the common law, which he contends is in force in Texas, the marriage of a feme sole revokes a will made by her previous to her marriage and (3) that under the laws of the State of Oklahoma the marriage of a feme sole revokes her will previously made and the Texas court should give effect to the provisions of the laws of that State under the full faith and credit clause of the Federal Constitution, Art. 4, § 1.

Concerning contestant's first contention made, as a general rule the original jurisdiction of the probate of a will does lie in the state of the domicile of the deceased, but there are exceptions to the general rule and the courts of this and many other jurisdictions have often made an exception to the general rule contestant here relies on. In the case at bar the testatrix resided in the State of Oklahoma at all times material to the issues here presented and she never had a fixed place of residence in Texas at any time material to the said issues. But her principal estate was situated in Childress County, Texas, and the two quarter sections of land located in that County was all the realty disposed of under the terms of the will. Certain personal property was

disposed of under the terms of the will but the disposition to be made of the realty mentioned in the will is all that is here involved.

In support of his contention contestant cites the provisions of 68 C.J., page 937, paragraph 687, which states the general rule he relies on, but it likewise states the exception thereto in the very next paragraph (688), beginning on page 939. In the same volume page 919, paragraph 659, the same exception to the general rule contestant relies on is again stated. In both exceptions it is stated, in effect, that a will may be admitted to probate in other jurisdictions than the county and state of the testator's residence at the time of his death if the will disposes of or affects real property situated in such other jurisdiction and that such a will may be admitted to probate in such other jurisdiction even though it had not been previously probated in the state or county of the testator's residence.

The rule governing the question here presented was announced by the Supreme Court in the case of Holman v. Hopkins, 27 Tex. 38, and in the following language:

"The only question presented by the record is whether the will of Mrs. Holman, executed in Virginia, the place of her domicile, according to the laws of this state, though it may be not according to the law of Virginia, should be admitted to probate.

"It is now the well settled doctrine, that the law of the actual domicile of a testator is to govern in relation to his testament of personal property, whether the property is situated within the domicile of the testator or in a foreign country. Story's Conflict of Laws, sec. 467; 1 Jarman on Wills, 3.) But in respect to the real property of the testator, the place where the property is situated is to govern, not only as to the capacity of the testator and the extent of his power to dispose of the property, but as to the forms and solemnities to give the will its due attestation and effect. (Story's Con. L., sec. 474; 1 Jarman on Wills, 1.) 'And hence,' says Mr. Jarman, 'the place where the will of immovable property happens to be made, and the language in which it is written, are wholly unimportant as affecting both its construction and the ceremonial of its exe-

cution; the locality of the devised property is alone to be considered.' "

The court then further held that a will which is not valid to pass the title to personal property, because not executed according to the laws of the testator's domicile, will be valid and effectual to devise real property situated in this State when the will has been duly executed according to the requirements of the laws of this State.

In the case of Crossland v. Dunham, 135 Tex. 301, 140 S.W.2d 1095, 1096, the Supreme Court again states the rule in the following language: " 'the effect and construction of wills is to be determined by the law of the testator's domicile, in so far as it relates to personal property, and by the laws of the state where the property is situated, in so far as it relates to realty. DeVaughn v. Hutchinson, 165 U.S. 566, 17 S.Ct. 461, 41 L.Ed. 827; Holman v. Hopkins, 27 Tex. 38; King v. Lowry, Tex.Civ.App., 80 S.W. 2d 790, writ refused.' [Dunham v. Crossland, Tex.Civ.App., 115 S.W.2d 744.]"

Following that statement the court there quotes at length from the case of Holman v. Hopkins, supra, particularly the rule of law heretofore quoted by us from that case, and then said with reference to such rule:

"Also, we are of the view that we reaffirmed the rules of law announced in the Holman case by refusing the writ of error in King v. Lowery, supra.

"Counsel for Mrs. Crossland argue that the opinion in the Holman case, supra, was based, or attempted to be based, on the misinterpretation of Story's Conflict of Laws, sec. 474. We will not attempt to decide that question. It is enough to say that the opinion in the Holman case announces a clear and unambiguous rule of property in this State, which we ought not now to question or to change."

The same rule of law is announced in the following cases: Singleton v. St. Louis Union Trust Co., Tex.Civ.App., 191 S.W.2d 143; Simmons v. O'Connor, Tex.Civ.App., 149 S.W.2d 1107; and DeTray v. Hardgrove, Tex.Com.App., 52 S.W.2d 239. In the last case cited the Commission of Appeals stated that according to well established principles the Legislature of one state

has no power to confer jurisdiction over property situated in another state and such is particularly true with reference to real property. In that case the Commission of Appeals likewise construed Articles 3293, 3329 and 3343, Vernon's Annotated Civil Statutes, which have an immediate bearing on the question of authority of a probate court of this State to probate an original instrument constituting what may be considered a foreign will or the will of a testator whose domicile was not in this State. The record in the case at bar reveals that the nearest kin of the testatrix residing in Texas lived in Childress County and that her principal estate including the land in question was situated in that County. Section 3 of Article 3293 provides that a will shall be admitted to probate in the county in this State where the nearest of kin resided if testatrix had no domicile or fixed place of residence in Texas and died without the limits of this State. Section 4 of the same Article further provides that in such event the will shall be probated in the county where the principal estate of testatrix was situated if she had no kindred in this State. In the DeTray-Hardgrove case the Commission of Appeals held that the language of Article 3293 when fairly construed discloses a legislative purpose not only to authorize the probate of foreign wills in this State, but also to make such authority dependent on the existence, in this State, of property belonging to the estate of the deceased. The rule of law there recognized by the Commission of Appeals is well stated in 57 Am.Jur. 524–25, paragraph 767, to the effect that it is not necessarily required that a will such as the one being here considered be first offered for probate in the county or state of the domicile of the deceased before it can be admitted to probate in this State. A full and complete brief of this question is found in 119 A.L.R. beginning on page 491. There most, if not all, of the foregoing cited authorities and many others in this and other jurisdictions are fully discussed.

■ Contestant cites and relies principally on the case of Holland v. Jackson, 121 Tex. 1, 37 S.W.2d 726, to support his contention here made. But that case has a dif-

ferent factual situation and a different principal of law is there involved. It is our opinion that the rules of law controlling the issues there presented do not control the issues presented here. It is our opinion further that contestant's plea to the jurisdiction of the court was properly overruled by the trial court.

■ Contestant's second contention to the effect that the provisions of the common law governing such matters are in force in Texas and that the marriage of a feme sole revokes her will previously made is not well taken. The common law of England is the rule of decision in Texas except where it has been abrogated by statute as provided for in Article 1, Vernon's Annotated Civil Statutes. The Texas Legislature has enacted laws governing the execution and revocation of wills and the manner in which valid wills shall be admitted to probate, thus abrogating the use of the common law in such matters. Concerning the rules governing construction of civil statutes, Section 8 of Article 10, provides that: "The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

The revocation of a will is governed by Article 8285, which provides that: "No will in writing, made in conformity with the preceding articles, nor any clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil or declaration in writing, executed with like formalities, or by the testator destroying, canceling or obliterating the same, or causing it to be done in his presence."

In determining whether or not our statutes should prevail or a will could be revoked by implication for causes deemed sufficient under the common law rule, the Supreme Court said in the case of Morgan v. Davenport, 60 Tex. 230: "We therefore hold that under the statutes of this state there can be no such thing as the revocation of a valid written will, unless the same be

revoked in one of the manners prescribed by the statute." The rule there announced has since been consistently followed. Evans v. Evans, Tex.Civ.App., 186 S.W. 815; Aschenbeck v. Aschenbeck, Tex.Civ.App., 62 S.W.2d 326; Frame v. Whitaker, Tex.Civ. App., 7 S.W.2d 140, reversed on other grounds, 120 Tex. 53, 36 S.W.2d 149; Pullen v. Russ, Tex.Civ.App., 209 S.W.2d 630. It clearly appears that the rules of common law do not prevail in Texas in such probate matters as were contended by contestant. It therefore appears that the will of testatrix, in so far as its terms affected the realty situated in Texas, was not revoked under the rules of common law by reason of her subsequent marriage.

In his third point contestant contends that under the full faith and credit clause of the Federal Constitution, the courts of Texas should give effect to an Oklahoma statute which provides that marriage of a feme sole revokes a will previously made by her.

The record reveals that the only realty devised by testatrix in the will here under consideration was situated in Childress County, Texas. To give effect to the statute of the State of Oklahoma as contended by contestant would authorize the laws of that State to control the passage of title to the land in question situated wholly within the State of Texas. Under authorities previously herein cited and many others, it has been universally held that one state is without jurisdiction, by statutory enactment, to govern the acquisition, disposition or devolution of the title to real property situated in another state. The general rule is well stated in 15 C.J.S., Conflict of Laws, § 19, page 936, in the following language:

"The law of the situs of immovable property controls and governs its acquisition, disposition, and devolution.

"Immovable property is exclusively subject to the laws of the government within whose limits it is located, and it is a rule firmly established by numerous decisions that the law of the jurisdiction in which such property is situated controls and governs its acquisition, disposition, and devolution. This rule, which is embodied in the Restatement, is universal, applying generally to all property classed as immovable, and operates between the several states of the United States as well as between countries entirely foreign to each other. It is not in the power of any state by any legislative act to prescribe the mode in which lands in another state may be disposed of or title thereto passed from one person to another."

12 Am.Jur. 379 and 380, paragraph 705, says:

"The full faith and credit clause of the Federal Constitution prescribes a rule by which courts, Federal and state, are to be guided when a question arises in the progress of a pending suit as to the faith and credit to be given by the court to the public acts, records, and judicial proceedings of a state other than that in which the court is sitting. * * *

"Full faith and credit is enjoined by the Constitution only with respect to those public acts which are within the legislative jurisdiction of the enacting state. For example, since one state cannot legislate to affect the transmission of title to lands located in another state, the courts of a state in which land is located need not, because of the full faith and credit clause, give effect to a statute of another state which would control the devolution of title to lands of the forum."

11 Am.Jur. 484, paragraph 177, lays down an applicable general rule previously herein cited in the following language: "Whether acts or events subsequent to the execution of a will constitute a revocation is determined, in the case of a bequest of personalty, by the law of the testator's domicil at the time of death and, in the case of a devise of realty, by the lex rei sitæ. Thus, whether the marriage of a woman revokes a will previously made by her depends, in the case of real property, upon the law of the state where the property is located and, with reference to personal property, upon the law of the state where the testatrix was domiciled at the time of her decease."

■■ Under the authorities cited it appears to be a general rule that the question of whether or not the marriage of a feme sole revokes a will previously made passing

title to realty is governed exclusively by the laws of the state where the realty is located. In support of the rule we cite the following additional authorities: King v. Lowry, Tex. Civ.App., 80 S.W.2d 790; Carpenter v. Bell, 96 Tenn. 294, 34 S.W. 209; Sternberg v. St. Louis Union Trust Co., 394 Ill. 452, 68 N.E.2d 892, 169 A.L.R. 545; 68 C.J. 828, paragraph 531; 12 C.J. 477, paragraph 75; 15 C.J.S., Conflict of Laws, § 19; 169 A.L.R. beginning at page 554; and 57 A.L.R. beginning at page 229. Under Texas laws, which must control in the issues here presented, the subsequent marriage of testatrix did not revoke her will previously made.

Under the authorities cited and for the reasons stated, all of contestant's points of error are overruled and the judgment of the trial court is affirmed.