

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-21-00137-CV

_____

**ESTATE OF JOE D. WHITTENBURG, JR., DECEASED**

On Appeal from the County Court at Law No. 2
Randall County, Texas
Trial Court No. 2015-205-P-1, Honorable William C. Sowder, Presiding

April 13, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Ginger Boone appeals from an order granting the plea to the jurisdiction and motion for summary judgment of Wanda Whittenburg. We reverse.

*Background*

On June 3, 2015, Wanda Whittenburg filed an application to probate the will of her brother, Joe D. Whittenburg. Therein, she represented that he (1) domiciled himself in Randall County at his death, though he lived in Portales, New Mexico; (2) died unmarried; and (3) named her as his sole heir. That resulted in the will being admitted into probate and the court issuing letters testamentary on September 16, 2015. Nothing of record indicates that the administration of Joe's testamentary estate ever closed.

Almost two years later, Ginger interjected herself into the matter via a bill of review. Allegedly, she and Joe entered into a common law marriage in Texas before the two moved to Portales, New Mexico. Thereafter, New Mexico became their domicile while the two lived in Portales. As his common law wife, Ginger asserts she is Joe's true heir. Other pleadings of Ginger followed her initial bill of review. They included an amended bill of review and original and amended pleas in intervention. The underlying theme of each revolved around the same premise: she being Joe's common law wife and heir and the two being domiciled in New Mexico. Added were claims about New Mexico law controlling aspects of the disposition of Joe's testamentary estate, Ginger holding the status of a pretermitted spouse under that law, and her being entitled to half of the community property of the marital estate under Texas law. Needless to say, Wanda disputed these allegations and ultimately filed a plea to the trial court's jurisdiction and moved for summary judgment. The trial court granted both, dismissed Ginger's heirship proceeding, and denied her remaining claims.

### *Plea to the Jurisdiction*

We first address the plea to the jurisdiction. Ginger contends that the trial court erred in granting it. We sustain the issue.

The standard of review applied here is that discussed in *Black v. McLane*, No. 07-19-00241-CV, 2021 Tex. App. LEXIS 2195, at *6–7 (Tex. App.—Amarillo Mar. 23, 2021, no pet.) (mem. op.). Reading the live pleading of Ginger liberally as required in *Black*, we note that she averred multiple claims for relief.[1] They included (1) a declaration that she

---

[1] The live pleading to which we refer is Ginger's second amended plea in intervention. Though she filed a third amended plea, she did so after the trial court convened its hearing upon the plea to the jurisdiction and summary judgment motion. The trial court stated in its final order that it considered "the pleadings on file." Had the latter phrase appeared in circumstances where the third amended pleading was

2

was Joe's common law spouse "under Texas Family Code 2.401(a)(2)"; (2) a "determination and declaration of heirship under Texas Estate Code 202.001"; (3) a "determination from . . . that she is the spouse of" Joe; (4) Joe "was domiciled in New Mexico"; (5) Joe's "estate is to be administered in accordance with New Mexico law"; (6) Ginger "is . . . entitled to the statutory spousal share of Decedent's estate" as a pretermitted widow under N.M. Stat. Ann. § 45-2-301; and, (7) a declaration as to what property constitutes community property of their marriage to which she would be entitled. Wanda did not contend that the trial court lacked jurisdiction to declare and adjudicate whether (1) Ginger and Joe were informally married within the scope of § 2.401(a) of the Family Code,[2] (2) New Mexico controlled the disposition of at least some aspect of Joe's estate given the couple's purported domiciliary in that State,[3] (3) Ginger was a

---

filed within six days before the hearing, we could presume that the trial court granted Ginger leave to file it. *See Triex Tex. Holdings, LLC v. Marcus & Millichap Real Estate Inv. Servs.*, No. 07-18-00077-CV, 2019 Tex. App. LEXIS 3365, at *5 n.1 (Tex. App.—Amarillo Apr. 25, 2019, no pet.) (mem. op.) (stating that a trial court is presumed to have granted leave to file and to have considered a late-filed pleading when (1) the pleading is part of the record before the court, (2) the trial court's judgment states that all pleadings on file were considered, and (3) the opposing party has not shown surprise or prejudice). Yet, it was filed after the hearing without securing leave to do so. Thus, we do not presume the trial court granted leave. *See McConnell v. Coventry Health Care Nat'l Network,* No. 05-13-01365-CV, 2015 Tex. App. LEXIS 8038, at *11–12 (Tex. App.—Dallas July 30, 2015, pet. denied) (quoting *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (stating that "'[u]nless the record shows that the trial court granted leave to file the pleading, the appellate court will assume leave was denied'"); *D.R. Horton - Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 224 (Tex. App.—Fort Worth 2013, no pet.) (stating that a "pleading filed after the summary judgment hearing without leave of court cannot be considered by the trial court"). Thus, we consider Ginger's second amended pleading as her live one.

[2] Section 2.401(a) provides that "[i]n a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that: (1) a declaration of their marriage has been signed as provided by this subchapter; or (2) the man and woman agreed to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." TEX. FAM. CODE ANN. § 2.401(a).

[3] *See Crossland v. Dunham*, 140 S.W.2d 1095, 1097 (Tex. 1940) (stating that "the law of the actual domicile of a testator is to govern in relation to his testament of personal property, whether the property is situated within the domicile of the testator or in a foreign country").

3

pretermitted spouse under New Mexico law,[4] and (4) the marital estate included community property in which Ginger had an enforceable property interest, irrespective of the couple's domicile.

Statute provides that the court exercising original probate jurisdiction "also has jurisdiction of all matters related to the probate proceeding."  TEX. EST. CODE ANN. § 32.001(a).  This grant of authority includes "pendent and ancillary jurisdiction as necessary to promote judicial efficiency and economy."  *Id.* § 32.001(b).  Also according to statute, "probate proceeding[s]" include both an "heirship" determination, *id.* at § 31.001(3), and "an application, petition, motion, or action regarding the probate of a will or an estate administration."  *Id.* § 31.001(4).  In turn, "a matter related to a probate proceeding includes" "an action for trial of title to real property that is estate property," *id.* § 31.002(a)(5), and an action "for trial of the right of property that is estate property."  *Id.* § 31.002(a)(6); *see also id.* § 31.002(b)(1) (stating that in "a county in which . . . there is a county court at law exercising original probate jurisdiction, a matter related to a probate

---

[4] Section 45-2-301 of the New Mexico statutes provides:

If a testator's surviving spouse married the testator after the testator executed his will, the surviving spouse is entitled to receive, as an intestate share, no less than the value of the share of the estate he would have received if the testator had died intestate as to that portion of the testator's estate, if any, that neither is devised to a child of the testator who was born before the testator married the surviving spouse and who is not a child of the surviving spouse nor is devised to a descendant of such a child or passes pursuant to Section 45-2-603 or 45-2-604 NMSA 1978 to such a child or to a descendant of such a child, unless:

(1) it appears from the will or other evidence that the will was made in contemplation of the testator's marriage to the surviving spouse;

(2) the will expresses the intention that it is to be effective notwithstanding any subsequent marriage; or

(3) the testator provided for the spouse by transfer outside the will and the intent that the transfer be in lieu of a testamentary provision is shown by the testator's statements or is reasonably inferred from the amount of the transfer or other evidence.

4

proceeding includes: (1) all matters and actions described in Subsection (a)").  As can be seen, the jurisdictional grant extended to the probate court (or here, the county court at law acting in probate) is quite pervasive.  Furthermore, the borders established by the foregoing statutes encompass each claim omitted from Wanda's plea to the jurisdiction because they involve property of the estate and disputes regarding probate of Joe's will and the administration of the underlying estate.

As for the matter of determining heirship, Wanda contends that the matter fell outside the court's jurisdiction because Joe died testate.  Admittedly, statute provides that a court "may conduct a proceeding to declare heirship when . . . a person dies **intestate** owning or entitled to property in this state and there has been no administration in this state of the person's estate."  *Id.* § 202.002(1) (emphasis added).  Yet, the statute does not end there.  The legislature also authorized a court to conduct the proceeding when "there has been a will probated in this state or elsewhere or an administration in this state of a decedent's estate, but . . . (B) no final disposition of property in this state has been made in the administration."  *Id.* § 202.002(2)(B).  Ginger averred in her live pleading that Joe's "[w]ill has been admitted to probate and his Estate has yet to be distributed."  Construing her pleading liberally, we read this statement as averring that no final disposition of the property has been "made in the administration" of his estate.  And, in our so construing the statement, her averment clears the hurdles imposed by the standard of review, that hurdle being the petitioner's need to plead requisite jurisdictional facts.  *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (stating that "[w]hen a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause"); *see also*

5

*In re Diocese of Lubbock*, 624 S.W.3d 506, 512 (Tex. 2021) (orig. proceeding) (quoting *City of El Paso,* 284 S.W.3d at 378 and stating that a "court should deny a plea to the jurisdiction when 'the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause'"). In other words, Ginger did that which Wanda said she did not; Ginger pled an exception to the statutory rule requiring the decedent to die intestate. In so holding, we do not ignore another of Wanda's contentions relating to the interpretation of § 202.002(2)(B). It is her assertion that the operative circumstance under that proviso is merely the existence of a will purporting to dispose of the testator's property. Wanda's assertion does not withstand analysis, however.

First, it ignores the statutory passage alluding to the manner of disposition. Again, the legislature said an heirship proceeding could be had if the decedent had a will and "no final disposition of property in this state ***has been made in the administration***." TEX. EST. CODE ANN. § 202.002(2)(B) (emphasis added). "[H]as been made in the administration" denotes that the pivotal "final disposition of property" is that made through the administration of the decedent's estate, not simply through a disposition made in the will.

Second, if all that was needed was the existence of a will disposing of the testator's property, then §§ 255.001 *et seq.* of the Estates Code would be nullified in important respects. Those sections afford a pretermitted child opportunity to inherit from a parent. *See id.* § 255.053(a) (stating that "[i]f a testator has no child living when the testator executes the testator's last will, a pretermitted child succeeds to the portion of the testator's separate and community estate . . . to which the pretermitted child would have been entitled under Section 201.001 if the testator had died intestate without a surviving

6

spouse"); *see also id.* § 255.051 (defining a pretermitted child as a testator's child who is born or adopted (1) during the testator's lifetime or after the testator's death; and (2) after the execution of the testator's will). If we were to accept Wanda's premise that a mere will disposing of all property is enough to thwart application of § 202.002(2)(B), then a later born child could not benefit from § 255.051 *et seq.* if question arose as to whether he was the decedent's offspring. He would effectively be denied the opportunity to prove his status as an heir. It is difficult to conclude that the legislature intended § 202.002(2)(B) to be so read or otherwise cause that result, especially when questions of actual lineage have been known to arise.

Finally, the controlling precedent cited us by Wanda, i.e., *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494 (Tex. 2010), not only contradicts her position but supports our conclusion. There, it was held that the trial court's jurisdiction to determine heirship was non-existent "[b]ecause Kenedy left a will that disposed of all his property . . . and because ***his estate was fully administered and closed***." *Id.* at 507 (emphasis added). The estate being "administered and closed" coupled with the presence of a will were the operative circumstances, not simply the presence of a will disposing of all property.

In view of the foregoing, we conclude that the trial court erred in granting the plea and dismissing Ginger's suit on jurisdictional grounds.

### *Summary Judgment*

As for Wanda's motion for summary judgment, the grounds urged mirrored those in her plea to the jurisdiction. This is illustrated by her allegations that (1) she "moves for summary judgment on the claim for a determination of heirship"; (2) "Ginger . . . is not entitled to a determination of heirship pursuant to Section 202.001 of the Texas Estates

7

Code"; (3) "Ginger . . . did not plead, and there is no evidence of, the necessary circumstance under which a proceeding to declare heirship is authorized pursuant to Section 202.002 of the Texas Estates Code"; and (4) she was "entitled to summary judgment as a matter of law for the reason that the relief sought by . . . Ginger . . . is not authorized because Joe . . . left a will that disposes of all of his property and that will has been admitted to probate." Given the identity of grounds between the motion and plea, the very reasons warranting the denial of the plea also warrant denial of the motion.

First, the motion addressed only one claim within Ginger's live pleading. Because summary judgment may not be granted on grounds or claims not encompassed by the motion, *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002); *Sanchez v. Roberts Truck Ctr. of Tex., LLC*, No. 07-17-00213-CV, 2018 Tex. App. LEXIS 8213, at *3–4 (Tex. App.—Amarillo Oct. 9, 2018, pet. denied), the trial court erred in granting summary judgment upon all the non-§ 202.002(2)(B) claims of Ginger.

Second and as we explained earlier, the mere presence of a will disposing of the testator's property does not alone defeat an heirship proceeding instigated under § 202.002(2)(B). Thus, her sole ground alleged below averring the contrary did not entitle her to summary judgment.

Accordingly, we reverse the trial court's order dismissing the heirship proceeding for want of jurisdiction and denying Ginger recovery upon her other causes of action. The cause is remanded to the trial court.

Brian Quinn
Chief Justice

8